## MILLER v. SWARTZ et al.

District Court, E. D. Pennsylvania. Nov. 22, 1929.

No. 4829.

Busser & Harding, of Philadelphia, Pa., for plaintiff.

Julius C. Levi, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. A ruling in this case was withheld awaiting briefs which have just been received.

This cause concerns letters patent No. 1,690,776, issued November 6, 1928, to Frederick R. Elston, assignor of the plaintiff. The application states that the invention claimed "relates to a woven material and particularly to a mottled appearance." All of the claims of the application were rejected, except one, which was allowed only after its scope had been restricted to very narrow limits. The path traveled to the finding of invention is so narrow that it may be said to have no width, for it is in truth merely a line.

The real issue here is one of validity. Infringement is not in controversy. The reason for this is that the question of the validity of this patent is deemed by the trade to be of great importance; hence the wish to have validity determined. The narrowness of the claim has resulted in the presentation of the case as if the right was a copyright or trade-mark right, and of the defense as if the complaint against the defendant were that of unfair competition. Either right is one to a monopoly, but a copyright or trade-mark monopoly has a wholly different basis from that of a patent-right monopoly.

An outline statement of the state and practice of the weaving art will make clear the line of thought which the plaintiff claims leads to a finding of invention, a claim which is sought to be supported by an argument of clarity and force. The desire of all makers of fabrics was to produce something which would appeal to prospective buyers. Designers of cloths and other woven fabrics made up what in the terminology of the trade is known as a blanket. This had the dimensions of the fabric to be woven, but it was made up on the patchwork quilt pattern in the sense of being divided up into small square areas, each of which was a try out of weaves of different combinations of threads in respect to colors and arrangement of colors and of threads. A recall of the lessons of our school days on the subject of permutations and combinations will present the number of different arrangements of threads which might be made and different results reached. The number is practically and almost literally represented

by infinity. Upon this infinitude every designer had the call. The accident of chance determined the result presented by each square. After the blanket had been thus made, the designer selected such as appealed to his own taste and what were thought would appeal to buyers. If all were rejected, a new blanket with new and different combinations was tried. This explains the testimony of many of the witnesses when confronted with a fabric made in accordance with the special combinations of the patent that they had made and seen makes of fabrics similar in weave and appearance effect, but could not say they had made or seen fabrics identical in combination of weave and color of threads with that of the patent. As designers were always striving to get any possible combination which had value, and as thousands were seeking all such possible combinations, and this search had been going on for years, no one could say that fabrics of any given combination had not been made and sold in the market.

The fad of wearing fabrics of a so-called mottled appearance came into vogue or reappeared some time before February 13, 1926. More probably there was a recurrence of such a fad. At all events, such "mottled effect" was present in fabrics on the market. The patent application states that the methods in use to produce this effect were "by twisting strands of different colors" or by "dyeing" the fabric. The patentee's thought was that he could produce the same effect by a combination of weave with threads of different colors, and found he could do it by the use of the combination of the patent. He further claims he thereby produced the desired effect more economically. Further utility was claimed in an improved woven fabric, but the claims embodying these features were rejected in the patent office. The fact is found that there was known to the art the method of producing the variegated appearance, expressed in common speech as "mottled," by the combination of weave and color of threads, as well as by the two methods described in the application.

The line of thought can none the less be followed that, although the followers of the art had the whole field of possible combinations upon which to call, if one fell upon a particular combination, the benefit of which the trade had not before had, and which was of real value, the discoverer might well be thought to have invented something in the patentable sense because possessing novelty and utility. The grant of these letters was born of this thought. Such a monopoly, if granted, would be restricted, as the claim of this patent is, to the particular combination thus come upon, and thus could be really nothing more than a monopoly of a particular make of fabric.

The considerations which have weight in the opposing view are that such a patentee has done no more than other designers are every day doing, which is to try different combinations until an acceptable make of fabric results, and that, if he is given a patent upon a particular combination, patents must be granted for other particular combinations, the result of which would play havoc with the trade. The practice (which may or may not be ethical) is for one manufacturer who finds in domestic or foreign makes of fabrics something which commands, or he thinks will command, a ready sale, to put out a fabric like it, and thus get a share of the trade. Outside the scope of the patent and trade-mark laws and the law of unfair competition, such sharing in the trade is not unlawful. The plaintiff, along with his competitors, followed this practice, but there is no justification for the finding which we are asked to make that the patentee thus found the combination he has had patented. If, as the patent application assumes, it were true that the only way of making a fabric with the mottled effect appearance known to the trade was by a method more expensive than the method of the patent, validity might possibly be found, as novelty and utility would both be present. The fact is, however, that the same method which the patentee employs was known to the trade, and that all the patentee, at the most, did was to make a fabric by the use of a particular combination which possessed utility, in that it was more economical than the twisted strands and dyeing methods. The Patent Office found, a finding in which the patentee acquiesced, that the combination of the application without the element of the mottled appearance, as defined in the patent, did not, in view of the state of the art, disclose invention, and allowed the claim of the patent only after the insertion of this element.

We are unable to accept this reason for the grant of a monopoly. Patents issue for new things created or a new process by which things are made. The mental attitude of the patentee in the sense of motive, purpose, or intent will not make that patentable which would not otherwise be so. The thing of the patent without the final element would be the same thing of the same mottled appearance as it is with it. The phrase "whereby a pattern having a mottled appearance" (on the insertion of which in the claim the patent is-

sued) has no function beyond a descriptive one or as a statement of purpose. The same mottled appearance would be there whether it was said to be there or not. It is true that a thing having a mottled appearance is as much a thing, in the patentable sense, as is a thing of any other appearance, but no patent would issue for a fabric having a mottled appearance, either as the word is employed in common speech or as defined in the application (if there is in this respect a difference), because fabrics of this appearance were admittedly possessions of the art. Claims for a fabric woven, as is that of the patent, were rejected for the same reason. We do not see that the fabric comes any nearer to being the product of patentable invention by putting all these things in one description. It is true, of course, that a combination may be patentable, although every element is old, but, when true, it is because a new and useful result is produced. Here the result is not new. Of course, if it had been produced in a new way, it might be patentable, and this is what is claimed for it. The way of producing it is by a combination of threads grouped in a given color relation in warp and woof and woven in a given way, but this was something a patent for which was denied.

The very resourceful counsel for the plaintiff takes refuge in the claim that the result was new, not in that it was merely a fabric of mottled appearance, but was of the definite type of mottle produced by twisted thread and as defined in the application, and that specific kind of mottle was produced, not by the use of twisted thread or by dyeing, but in the more economical way outlined in the claim.

This finding, however, we refuse to make, because it cannot be made. It may be true that the mottle produced by the use of twisted thread is typical, and was before reproduced in appearance only by dyeing. There was, however, produced by the weaver's art an appearance in the fabric so like that of twisted thread that only an expert would recognize a difference, and he knew of it, not from any difference in appearance, but by a close inspection of the weave and the picking apart of the threads. In this respect there is no difference in the fabrics of the old art and that of the patent.

As before stated, there is a practical unanimity of testimony that for years fabrics had from time to time been put upon the market which to the eye were so like that of the patent that by this test they would be and were pronounced identical. Whether they were so in all features of weave and in other respects most of the witnesses could not say, because this could be known only after the close inspection above mentioned, which was not made. Defendants confidently assert that there were fabrics, samples of which have been found and produced, of which the fabric of the patent is a duplication. Into this question we do not go, because we deem the inquiry needless.

Our finding is (and this is an iteration of what we have already stated) that the patentee did what had thousands of times been before done, hit upon a make of fabric which had the kind of mottled appearance, and was made in the way which suited his purpose, and in this sense was his special make of fabric. That the plaintiff should resent the putting of the same thing upon the market by others can be understood. The manufacturers of other special makes of fabric have doubtless the like resentment when their fabrics are "pirated," as they often are, by the plaintiff and others, but in neither case is there a just claim to a monopoly protected by law.

The conclusion reached is that the letters patent on which this bill is based are invalid for lack of invention, and that the bill should be dismissed, with costs, for want of equity.

A decree in accordance with this finding may be submitted.